UNION NATIONAL BANK OF LITTLE ROCK
*v.* METROPOLITAN NATIONAL BANK

78-253                                         578 S.W. 2d 220

Opinion delivered March 26, 1979
(In Banc)

*Griffin Smith* and *W. R. Nixon, Jr.,* for appellant.

*Friday, Eldred: & Clark* and *Paul B. Benham, III,* for appellee.

GEORGE ROSE SMITH, Justice. This is a controversy between two Little Rock banks over which one is to bear a $5,868.15 loss that resulted from Union National Bank's having cashed 15 bad checks drawn on an account in Metropolitan National Bank. The trial judge held that Union must bear the loss, because Metropolitan promptly returned

the bad checks. Union contends that the return was not timely, so that Metropolitan should suffer the loss.

The facts are not in dispute. On Friday, July 30, 1976, one Jeff R. Johnson cashed 15 identical checks, each for $391.21, at various Union branch offices in Little Rock. On Monday, August 2, Union deposited 11 of the checks, for collection, with the Little Rock Branch of the Federal Reserve System (FED). (The other 4 checks were handled one business day later, but that difference is immaterial.) Metropolitan picked up the 11 checks at FED on Monday afternoon, determined on Tuesday that they should be dishonored, and mailed them back to FED at 5:00 p.m. that afternoon. Union contends that Metropolitan's deadline for returning the checks was 2:00 p.m. on Tuesday. Metropolitan contends, and the trial court found, that its deadline was midnight on Tuesday. Which contention is correct depends upon whether the transaction was governed, on the one hand, by the Uniform Commercial Code and Federal Reserve regulations, both of which fix the midnight deadline, or, on the other hand, by an agreement creating the Central Arkansas Clearing House Association, which fixes the 2:00 p.m. deadline. Metropolitan is not a member of the clearing house association.

It is essential to understand at the outset that "clearing" is a method adopted by banks and bankers for making an exchange of checks, etc., held by each against the others and for settling the resulting differences in their accounts. Webster's New International Dictionary (2d ed., 1934). A clearing house is an institution established for carrying on the business of clearing. *Ibid.* We infer from the record that the Central Arkansas Clearing House Association does not have a physical existence in the sense of having employees or a place of business. It is simply an agreement among four Little Rock and two North Little Rock banks about the methods and deadlines by which they will clear one another's checks.

The clearing house agreement provides that the members' checks will be cleared by the use of a room provided and maintained by FED at its Little Rock office. In that room there is a row of nine bins, one for each of the nine "city

banks" that use the facility. There is a bin for each of the six members of the clearing house association, plus three bins for the non-member banks, one of which is Metropolitan.

We turn now to the path that was traveled by the 11 bad checks that were deposited with FED on Monday. On or before that morning Union bundled together all the checks that it then had against Metropolitan. Attached to the bundle was a Deposit Advice form, which was a printed form apparently specified by FED. That form lists the nine city banks, with a space after each bank's name for the total amount of checks being deposited for collection from that bank. In this instance, for example, Union filled in the total amount of its Metropolitan checks. At the bottom of the form is a detachable receipt by which FED acknowledges the "receipt of checks purporting. to amount to $ _____," for which credit is to be given on FED's books.

On Monday morning Union placed its bundle of Metropolitan checks, including the 11 in question, in Metropolitan's bin in the room at FED. FED credited Union's reserve account with the amount of the checks and debited Metropolitan's reserve account in the same amount. Metropolitan did not actually have its own account with FED, using instead a reserve account of First National Bank, another Little Rock bank, as Metropolitan's correspondent bank.

On Monday afternoon Metropolitan picked up the bundle of checks and delivered them to First National for off-premises computer processing. We infer that First National used its own computer system for handling Metropolitan's bookkeeping. First National's computer failed to clear the 11 checks, for insufficient funds. On Tuesday morning the bundle of checks went to Metropolitan, where its bookkeepers verified the worthlessness of the 11 checks. That afternoon, at about 5:00 p.m., Metropolitan mailed the checks back. to FED. They were accompanied by a Return Advice Form, which listed each check, the number of the depositing bank, the reason for return, and the amount. The printed form is addressed to FED, P. O. Box 1261, Little Rock. The checks were received by FED on Wednesday morning. FED then

reversed its entries, by crediting Metropolitan with the amount of the 11 checks and debiting Union by that amount. The checks were then placed in Union's bin and were picked up by it. A Union officer decided that the checks had been returned too late, and eventually this action was brought to recover the amount of the checks. The key issue, as we have said, is the controlling deadline for Metropolitan's return of the checks.

The parties agree that under the UCC the credit initially entered on Monday by FED to Union's account was merely provisional. Ark. Stat. Ann. § 85-4-201 (Add. 1961). Under the Code, Metropolitan had until midnight of the banking day following its receipt of the checks to return them to FED. § 85-4-301. If it failed to act by midnight, then the provisional credit to Union became final. § 85-4-213.

The Code provides, however, that its provisions may be varied by Federal Reserve regulations, clearing house rules, and the like. § 85-4-103. We are not concerned here with a variation by Federal Reserve regulation, because the Federal Reserve's Regulation J provides the same midnight deadline as that contained in the statute. Amendment to Federal Reserve Regulation J, 12 C.F.R. § 210.12 (effective Sept. 21, 1972). That regulation, however, contains this exception to the midnight deadline:

> Provided, that the foregoing provisions shall not extend . . . the time for return of unpaid items fixed by the rules and practices of any clearing house through which the item was presented . . .

Union argues that the checks in question were presented "through" the local clearing house, so that its two o'clock deadline superseded the midnight deadline fixed by the UCC and by the federal regulation.

We are not sure there is any substantial evidence to support a finding that the bad checks were presented to Metropolitan through the local clearing house, but in any event we find ample substantial evidence to support the trial court's finding that the checks were not so presented. Federal Regulation J has been described, we think accurately, as

providing "rules governing the clearing house operations provided by the Federal Reserve system for the collection of cash and non-cash items." *Kane* v. *American Nat. Bank & Tr. Co.,* 21 Ill. App. 3d 1046, 316 N.E. 2d 177 (1974). Thus the exchange of checks that occurred in the room maintained by FED in Little Rock was a "clearing" operation, but it was not controlled by the local clearing house association. To the contrary, it was completely owned and controlled by FED. FED's forms were used in the deposit of checks in the bins and in the return of dishonored checks to the bins. The debits and credits, which are really the ultimate purpose of such a clearing facility, were made solely on FED's books. It is, we think, fair to say that the course of the clearing operations at FED would have been precisely the same if the local clearing house had not existed. Thus the overwhelming proof shows that the checks were not presented through the local clearing house, of which Metropolitan was not a member.

Union argues, however, that three facts show that Metropolitan impliedly agreed to be bound by the clearing house rules, including the two o'clock deadline. Those three facts are: (1) Metropolitan designated First National (a clearing house member) as its correspondent bank for making settlement for items drawn on Metropolitan; (2) Metropolitan forwards its checks to First National to be presented at FED to other clearing house members; and (3) Metropolitan receives its items in its bin at FED just as the clearing house members do. Without discussing these three facts in detail, we think it sufficient to say that they demonstrate only that Metropolitan was using a correspondent bank instead of having its own account with FED, not that it was agreeing to clearing house rules of which, according to its witness, it actually had no knowledge. First National took no substantial part in the process, merely running the checks through its computer and making its reserve account available to Metropolitan as the latter's correspondent bank.

Alternatively, Union argues that even if the midnight deadline fixed by the statute is controlling, Metropolitan was not entitled to return its dishonored checks by a mail delivery that did not reach FED by midnight on Tuesday. The

statute, however, provides that an item is returned when it is "sent" to the bank's transferor. § 85-4-301 (4). "Send," under the statute, means among other things to deposit in the mail. § 85-1-201 (38). In a similar case it has been held that the deposit of the returned checks in the mail by midnight complies with the requirement that the checks be "sent" to the FED. *Blake* v. *Woodford Bank & Tr. Co.*, 555 S.W. 2d 589 (Ky. App., 1977). Thus the statute itself authorizes the procedure which Metropolitan, according to its witness, has been using since it began business in 1970.

Finally, Union argues under its alternative contention that the return of the checks by mail to FED was not sufficient, because, it is insisted, FED was not Metropolitan's "transferor" under the statute. We disagree. True, FED did not indorse the checks individually, but the statute does not require that formality in a transfer between banks. Any agreed method which identifies the transferor bank is sufficient for a further transfer to another bank. § 85-4-206. Here FED transferred the checks to Metropolitan in bundles, by means of the deposit advice form that accompanied the checks. In addition to providing a place for the physical transfer of the checks, FED took a substantive part in the chain of transfers by entering the proper debits and credits on its books, adjusting the parties' accounts accordingly. Upon that proof the trial court was warranted in finding that FED, not Union, was Metropolitan's transferor. Consequently Metropolitan's timely return of the checks to FED satisfied the requirement that the checks be returned to Metropolitan's transferor.

Affirmed.